IN THE UNITED STATES DISTRICT COURT FOR
THE CENTRAL DISTRICT OF ILLINOIS, ROCK ISLAND DIVISION

| | |
|---|---|
| FIDLAR TECHNOLOGIES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 4:13-cv-4021 |
| v. | ) |
| | ) |
| LPS REAL ESTATE DATA SOLUTIONS, INC. | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff, Fidlar Technologies., ("Fidlar" or "Plaintiff") brings this action against Defendant, LPS Real Estate Data Solutions, Inc. ("LPS" or "Defendant") for injunctive relief and damages under the laws of the United States and the State of Illinois, and alleges for its complaint as follows:

## INTRODUCTION

Fidlar is a technology company that for the last 20 years has provided computer hardware and software to approximately 200 county Recorders of Deeds and County Courthouses throughout the United States, to make public records available to the public electronically. Fidlar owns and operates software and computer servers that allow its customers access to certain public records from electronic databases by using Fidlar's software. LPS is a customer of Fidlar. As a customer of Fidlar, LPS was given Fidlar's software to install on its computers in order to access those records. Instead of using Fidlar's software to access Fidlar's servers, LPS created a computer program or programs that mimicked Fidlar's user-interface software and fraudulently accessed Fidlar's computer servers. LPS's misconduct hindered Fidlar's ability to track the use

1

of its software and servers. LPS's fraudulent access of Fidlar's servers has also caused and continues to interfere with the ability of Fidlar to provide services to its other customers. This action seeks monetary and injunctive relief to compensate Fidlar for the damages that it has incurred and to prevent the ongoing and irreparable harm to its business.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Fidlar is a corporation incorporated under the laws of the state of Michigan with its principal place of business located in Rock Island, Rock Island County, Illinois.

2. Defendant, LPS is a corporation organized under the laws of the state of California, with its principal place of business in the state of Florida.

3. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331, 28 U.S.C. 1332 and 28 U.S.C. § 1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391.

5. This Court has personal jurisdiction over LPS because it is a foreign corporation that committed tortious acts in this district.

## GENERAL ALLEGATIONS

6. Fidlar is a technology company that contracts with the offices of Recorders of Deeds, and county courthouses, in several counties located in Illinois and other states. Fidlar provides a range of software services, for a fee, that facilitate access by its customers to county databases that contain public records, including records of land ownership.

7. Fidlar owns computer programs that allow its customers to access, via the internet, documents in the county databases with whom it contracts.

8. One such program Fidlar operates is the "Laredo Program." Customers download the Laredo program onto their own computers, and pay a monthly fee directly to the county

which, in turn, remits a service fee to Fidlar for its use, which enables them access to documents from Fidlar's client governmental entities' databases, such as county court houses and Recorders of Deeds offices, throughout the nation, including but not limited to Rock Island, Illinois.

9. The Laredo program allows Fidlar's customers to only search, view and print documents from the databases searched and have certain user controls that prevent customers from electronically capturing and downloading documents. Counties charge the searching party a per- page fee to print documents.

10. Also embedded in the Laredo program are user controls that require the user to input information identifying the user.

11. The human user-interface design of the Laredo program prevents any individual user from obtaining information stored on Fidlar's servers without Fidlar's knowledge.

12. The counties with which Fidlar provides services, charge customers a per page fee for printing documents. The Laredo system allows Fidlar and the counties to track these charges and bill the user.

13. The Laredo user-interface program prevents users from capturing documents electronically.

## THE RELATIONSHIP BETWEEN FIDLAR AND LPS

14. LPS operates a line of business selling property data and analytics to real estate agents, brokers Master Listing Services, and boasts a robust database of 285 million property records nationwide.

15. Defendant has been a customer of Fidlar since at least 2009 using the Laredo program and has installed the Laredo program on its own computers.

16. Customers of Fidlar who purchase a Laredo license do so on a county-by-county basis. As such, LPS has purchased Laredo licenses in 76 counties where Fidlar has provides access to documents.

17. In or around 2012, LPS created one or more computer programs, the sole purpose of which were to mimic the interface between Fidlar's user-interface software and Fidlar's server software. The mimicked program allowed LPS to fraudulently present itself to Fidlar's server software as though it had gained access through the Laredo user-interface, but without the attendant user controls.

18. Fidlar's server software programs are designed to prevent Fidlar's customers from accessing those servers by any means other than through Fidlar's software.

19. Fidlar does not train, promote, or explicitly publish, nor intend to publish the techniques necessary to access Fidlar's server software directly and circumvent the Fidlar user-interface software of Laredo or Tapestry.

20. Specifically, LPS created mimic software that allowed Defendant to fraudulently obtain documents electronically and search at a higher rate and volume than would otherwise be possible.

21. This mimic software program that LPS created, allowed Defendant to gain fraudulent access to Fidlar's server software and bypass user controls embedded in the Laredo program. In this manner LPS fraudulently obtained documents that Fidlar server software had retrieved from governmental databases.

### SPECIFIC EXAMPLES OF COMPUTER FRAUD BY LPS

22. In early 2013, Fidlar had become aware of a strange usage pattern related to the LPS licenses.

23. The Laredo login monitors revealed that LPS had not recorded a login to the Laredo interface

in the 76 counties for which LPS has licenses for periods of years. Essentially, it appeared as if LPS was not using any of its Laredo licenses, but, LPS continued to pay its monthly subscription fee.

24. In February of 2013, Fidlar audited several LPS accounts to determine account activity. As a result of that audit, Fidlar learned the LPS has been engaged in a pattern of computer fraud.

25. All of the accounts audited demonstrated that LPS had been accessing Fidlar's software and electronically capturing documents from its client counties without its knowledge.

26. LPS accomplished this by bypassing the Fidlar user-interface software and directly accessed Fidlar's servers by means of an unauthorized computer program designed specifically for that purpose.

## **HENDRICKS COUNTY, INDIANA**

27. Through the period of January 11, 2013 through February 21, 2013, LPS conducted a series of searches in the database holding information of Hendricks County Indiana, on a computer server located in Rock Island County, Illinois.

28. On February 21, 2013, LPS conducted a series of 4,629 searches of Fidlar's servers, without accessing the proper user-interface, and directly accessed the information without paying the required printing fees. LPS obtained 792 individual documents as a result of these searches. Each of the individual searches lasted no longer than 480 milliseconds. These searches would not have been possible but for the use of robotic means with which to conduct them. Fidlar was able to track the public Internet Protocol (IP) address of the user to Defendant's place of business located in Jacksonville, Florida.

29. LPS should have been charged $1.00 per page. As a result of bypassing the user-interface and accessing Fidlar's servers directly LPS was able to avoid the print charge associated with these searches in the amount of $3,816.

## CLAY COUNTY, MINNESOTA

30. LPS purchased a Laredo license form Fidlar in January 2012. Fidlar has records of LPS using the Laredo user-interface once in January of 2012 for a period of 59 minutes. There has been no LPS activity from the Laredo user-interface since that initial login.

31. However, as a result of Fidlar's audit of the Defendant's account in Clay County, Minnesota, Fidlar learned that LPS was accessing information stored on its servers for Clay County. LPS was accessing information, and electronically capturing documents stored on Fidlar's servers, without going through Fidlar's user-interface.

32. On February 20, 2013, LPS conducted 941 searches for information related to Clay County Minnesota, accessing 181 documents. These searches took no longer than 686 milliseconds to complete. These searches would not have been possible but for the use of robotic means with which to conduct them. Fidlar was able to track the public Internet Protocol (IP address) of the user to Defendant's place of business located in Jacksonville, Florida.

33. LPS should have been charged $.35 per page. As a result of bypassing the user-interface and accessing Fidlar's servers directly LPS was able to avoid the print charge associated with these searches in the amount of $100.00.

## WHITESIDE COUNTY, ILLINOIS

34. LPS purchased a Laredo license for Whiteside County, Illinois in February 2012. LPS only accessed the user-interface for Whiteside County once on February 12, 2012 for a period of 18 minutes.

35. However, as a result of Fidlar's audit of the Defendant's account for Whiteside County, Fidlar learned that LPS was accessing information stored on Fidlar's servers related to Whiteside County without using the Laredo program.

36. On February 24, 2013, LPS conducted 948 searches for documents related to Whiteside County and obtained 146 documents. Each individual search lasted no longer than 170 milliseconds. Fidlar was able to track the public Internet Protocol (IP) address of the user to Defendant's place of business located Jacksonville, Florida.

37. LPS should have been charged $.25 per page. As a result of bypassing the user-interface and accessing Fidlar's servers directly LPS was able to avoid the print charge associated with these searches in the amount of $216.

## BLUE EARTH COUNTY, MINNESOTA

38. LPS purchased a Laredo license for Blue Earth County, Minnesota in January 2012. LPS only accessed the user-interface for Blue Earth County in January 2012 for a period of 167 minutes.

39. However, as a result of Fidlar's audit of the Defendant's account for Blue Earth County, Fidlar learned that LPS was accessing information stored on Fidlar's servers related to Whiteside County without using the Laredo program.

40. On February 20, 2013, LPS conducted 1149 searches for documents related to Blue Earth County and obtained 227 documents. Each individual search lasted no longer than 150 milliseconds. Fidlar was able to track the public Internet Protocol (IP) address of the user to Defendant's place of business located in Jacksonville, Florida.

41. LPS should have been charged $.35 per page. As a result of bypassing the user-interface and accessing Fidlar's servers directly LPS was able to avoid the print charge associated with these searches in the amount of $318.15.

42. LPS's fraud allowed it to conduct searches at a higher rate and volume than would be possible if the Laredo user-interface and controls had not been bypassed.

43. The use of the mimicked software has allowed Defendant to electronically capture documents, which would have been otherwise impossible. LPS's fraudulent access to Fidlar's servers continues to threaten to overload those servers.

44. Fidlar never granted Defendant the right to bypass its user-interface and controls or monitoring protocols on any of its software programs.

45. Fidlar was required to disable the user in order to return all counties and services to normal operation.

46. Fidlar believes that the single user was an agent of Defendant.

47. Subsequent investigation by Fidlar revealed similar patterns of improper usage in multiple counties, including Leavenworth County, Kansas.

48. Defendant was and continues to be able to disrupt Fidlar's operations by a method of bypassing the controls imbedded in the Laredo software and directly consuming the supporting Laredo services. The continued threat to the proper functioning of Fidlar's servers by the mimicked software is ongoing.

49. The impact was aggravated by the frequency of the requests and the wide search criteria intended to electronically capture and download large quantities of documents that would normally be prevented by the Laredo software.

50. Among other things, one function of the Laredo software is to monitor usage by customers.

51. The Defendant, through its use of software mimicking that of Fidlar's, was able to access Fidlar's computers without being subject to usage information monitors imbedded in the Laredo software.

52. As a result of Defendant's intentional conduct by which it fraudulently gained access to Fidlar's computers and computer servers, Fidlar has been forced to take actions to prevent further interruptions in service to its clients and customers, the value of which exceeds $5,000.

53. Fidlar has, and is continuing to suffer, irreparable harm to its business, as a result of the threat posed by the mimicked software to disable Fidlar's servers.

## COUNT I - VIOLATION OF 18 U.S.C. § 1030
## COMPUTER FRAUD AND ABUSE ACT

54. Fidlar re-alleges paragraphs 1 through 53 as if fully stated herein.

55. Fidlar owns and operates computers and computer servers which are located in Rock Island, Illinois.

56. Fidlar uses those computers and computer servers in interstate commerce.

57. Defendant has engaged in a pattern of unauthorized access of Fidlar's computers and computer servers, in order to intentionally obtain information from Fidlar's computers.

58. Defendant's intentional unauthorized use of Fidlar's products poses a continuing threat to Fidlar's business operations and business reputation.

59. As a result of Defendant's unauthorized use of Fidlar's computers and computer servers, Fidlar has been damaged in excess of $5,000 in the past calendar year.

60. To date, Fidlar has incurred economic damages in excess of $80,000 in attempting to determine the extent of Defendant's fraudulent invasion of its computers and computer servers, and those damages are ongoing and increasing.

61. Pursuant to 18 U.S.C. §1030, Fidlar is entitled to its compensatory damages and injunctive or other equitable relief.

62. Fidlar has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by LPS. Accordingly, Fidlar is entitled to injunctive relief.

### COUNT II - VIOLATION OF 720 ILCS 5/17-51

63. Fidlar re-alleges paragraphs 1 through 62 as if fully stated herein.

64. LPS, by creating and using the mimicked software to gain access to Fidlar's databases contained on its servers, exceeded its license agreement, and therefore gained access and obtained data without Fidlar's permission.

65. LPS knowingly and without authorization accessed Fidlar's computer servers and obtained data electronically, and without paying for the per page print charge for each document retrieved. Further, LPS inserted the mimicked software onto Fidlar's computer servers to prevent Fidlar from detecting its removal of data from Fidlar's computer servers.

66. Defendant's intentional conduct of creating a computer program was specifically designed to access Fidlar's computer servers without Fidlar's knowledge, and to obtain data, without paying for the data accessed and captured.

67. Pursuant to 720 ILCS 5/17-51(a)(4), Fidlar is entitled to its compensatory damages, reasonable attorney's fees, its litigation costs and is further entitled to punitive damages in the amount of at least $500,000.

68. In addition, Fidlar has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by LPS. Accordingly, Fidlar is entitled to injunctive relief.

## **COUNT III -TRESPASS TO CHATTEL**

69. Fidlar re-alleges paragraphs 1 through 68 as if fully stated herein.

70. LPS has intentionally and without authorization accessed and interacted with Fidlar's computers and computer servers. Access to Fidlar's servers and the information contained thereon is granted only to those users who comply with Fidlar's terms and conditions contained in the license agreement. By circumventing Fidlar's user-interface software and directly accessing Fidlar's computers and computer servers, defendants have unlawfully gained access to Fidlar's servers and engaged in theft of data located thereon.

71. Defendant's conduct constitutes a trespass that has and continues to harm Fidlar. As a result Fidlar has and continues to be damaged.

72. In addition, Fidlar has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by LPS. Accordingly, Fidlar is entitled to injunctive relief.

Respectfully submitted,

By:  Fidlar Technologies

/s/Jason Williams

One of its Attorneys

Jason R. Williams
Sawyier & Williams, LLP
205 N. Michigan, Suite 2600
Chicago, IL 60601 (312) 856-9740
(312) 856-9743(fax)
jwilliams@epaclaw.com