IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| FIDLAR TECNOLOGIES,<br>    Plaintiff/Counter-Defendant,<br><br>v.<br><br>LPS REAL ESTATE DATA<br>SOLUTIONS, INC.,<br>    Defendant/Counter-Claimant. | Case No. 4:13cv04021 |

**Order**

    Before the Court is LPS Real Estate Data Solutions, Inc.'s (LPS) Motion to Exclude Untimely Disclosed Evidence (D. 75) and Fidlar Technologies' Response thereto (D. 81). The Court held a hearing on the motion on December 17, 2014. The Court DENIED the motion at that time in part, to the extent that the Court declined to exclude Fidlar's rebuttal expert witness while at the same time giving LPS thirty days to depose that expert. Regarding the portion of LPS's motion which sought to exclude evidence related to Fidlar's claimed damages for diminution in business reputation and loss of good will, the Court DEFERRED ruling until such time as the Court could enter a written Order. The Court now GRANTS in part and DENIES in part LPS's motion, as explained, *infra*.

**I**

    Fidlar originally filed suit against LPS on March 1, 2013 (D. 1). The relevant general facts and allegations in this case are fully set forth in US District Judge Sara Darrow's Order dated November 8, 2013 (D. 42), and this Court will not repeat them here.

As for the facts relevant to the motion before the Court, the dispute before the Court centers around Fidlar's allegation in its complaint that LPS's "intentional unauthorized use of Fidlar's products poses a continuing threat to Fidlar's business operations and business reputation." (D. 1 at ECF p. 9; D. 31-1 at ECF p. 12). After the close of discovery, Fidlar supplemented its original answers to LPS's interrogatories, adding some details to its original submission regarding damages for diminution in business reputation and loss of goodwill. (D. 81-9). LPS asserts that the Court should exclude this evidence, arguing that Fidlar's submission is untimely, that Fidlar failed to disclose these damages in earlier submissions, and that Fidlar still has not quantified these damages as required by Federal Rule of Civil Procedure 26(a)(1)(A)(iii).

Fidlar filed its original Complaint on March 11, 2013, wherein it first alleged damages in the category now in dispute. (D. 1). Shortly thereafter, LPS filed its counterclaim and motion for a temporary restraining order and preliminary injunction. In anticipation of the hearing on the preliminary injunction, the parties engaged in expedited discovery. The Court held a hearing on the motion for a preliminary injunction on May 17, 2013 and entered its order denying the motion, among others, on November 8, 2013. (D. 42). Once these preliminary proceedings were concluded, the Court set the Rule 16 Scheduling Conference for January 15, 2014.

In anticipation of that conference, both parties filed proposed discovery plans on January 10, 2014, wherein they each indicated that initial disclosures were complete. (D. 46; D. 47). At the conference, the Court set the close of all fact discovery for August 1, 2014 and all discovery, including expert discovery, for November 1, 2014.

The parties then engaged in extensive discovery, producing over 200,000 pages of documents and conducting over 40 depositions. (D. 66). On June 16,

2014, LPS submitted interrogatories to Fidlar seeking answers related to Fidlar's allegation of harm to its business reputation and loss of goodwill. Specifically, Interrogatory 4 stated:

> With respect to your claims for damages in this lawsuit, specify each type or kind of damage or relief sought, the date and time period of any loss, the exact amount of monetary compensation or other relief sought for each type or kind of damage or relief sought, and the method by which any monetary damages were calculated.

(D. 76-1 at ECF p. 3). Additionally, Interrogatory 8 stated:

> Identify the bases of Fidlar's allegations in paragraph 87 of the Amended Complaint that LPS's alleged unauthorized use "of Fidlar's product poses a continuing threat to Fidlar's business operations and business reputation," including the facts, documents, and witnesses you believe support these allegations.

(D. 76-1 at ECF p. 3).

Before Fidlar answered the interrogatories, the parties on July 21, 2014 jointly moved to extend the fact discovery deadline only, and the Court reset the close of fact discovery to September 15, 2014—a 45 day extension. (D. 66).

Thereafter, on August 14, 2014, Fidlar responded to Interrogatory 4 by providing a detailed chart describing its damages and the amount of said damages in various categories. (D. 81-6 at ECF p. 5). Missing from the chart was any reference to damages stemming from diminution in business reputation and loss of good will, not to mention any attempted computation thereof. Id. However, Fidlar's answer did note that its investigation was "ongoing" and it reserved "the right to supplement its answer in compliance with the Federal Rule of Civil Procedure 26(e)." Id. In response to Interrogatory 8, Fidlar referred LPS generally to its Expedited and Second Production, the deposition transcript of Ginger Bradford, and "transcripts of the County Record of Deeds' depositions

3

that have been taken in this matter." (D. 81-6 at ECF p. 10). Again noting that its investigation was ongoing, Fidlar then identified four potential witnesses on the issue. Id.

On October 24, 2014, over a month after the close of fact discovery, Fidlar filed its "supplemental answers" to LPS's interrogatories. (D. 81-9). Regarding Interrogatory 4, Fidlar added that its dollar amount estimation of damages did not include "accumulating damages for loss of goodwill." (D. 81-9 at ECF p. 5). Fidlar also included a new category into its previously submitted damages chart for "diminution of business reputation and goodwill" (D. 81-9 at ECF p. 6), along with a three paragraph description of its damages in this area, citing various depositions and documents that had already been taken or produced. Again, however, it did not provide any computation for its damages nor explain how it did, or intended to, calculate those damages. Rather, Fidlar stated that "the full extent of Fidlar's reputational damage has yet to be determined." (D. 81-9 at ECF p. 10).

With respect to Interrogatory 8, Fidlar's supplemental answer added a reference to the now updated chart in answer to Interrogatory 4, as well as reference to some previously produced documents. (D. 81-9).

## II

LPS argues that "the Court should exclude evidence of Fidlar's claimed damages for diminution in business reputation and loss of goodwill." (D. 76 at ECF p. 2). According to LPS, Fidlar did not disclose its damages in this area in its initial discovery responses, but instead waited until after the close of discovery to do so in its supplemental answers to interrogatories. Not only was this disclosure untimely, according to LPS, but even the untimely disclosure fails to provide any dollar amount for said damages or a methodology for calculating the same. Id.

4

Receiving this information now, after the close of discovery, precludes LPS from seeking discovery related to this damages claim or to retain an expert in the area.

Fidlar responds that it claimed this type of damages in its original and Amended Complaint; maintained this claim throughout discovery in its answers to Interrogatories, document productions, and deposition inquiries; and its supplementation was timely pursuant to Rule 26, justified, and harmless. (D. 81 at ECF p. 2).

### III

### A

Under Rule 37(c)(1), "[a] party that without substantial justification fails to disclose information required by Rule 26(a) … is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." *Finwall v City of Chicago*, 239 FRD. 494, 498 (ND Ill) objections overruled, 239 FRD 504 (ND Ill 2006). The sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless. See *Keach v US Trust Co,* 419 F3d 626, 639 (7th Cir 2005); *Salgado by Salgado v General Motors Corp,* 150 F3d 735, 742 (7th Cir 1998); *Finwall*, 239 FRD at 494. Where the Court sets a deadline for the completion of discovery, the parties must complete discovery by that deadline or seek an extension of the deadline before it expires. See Id.

Adherence to the Court's deadlines is critical for the orderly management of a case, for each stage of a case depends on the preceding stages being completed. For example, dispositive motions are generally due within 30 days of the close of all discovery. See for example *Assaf v OSF Healthcare Systems,* 2015 WL 3865891, *1 (CD Ill). Allowing discovery productions after the close of a discovery deadline "runs the risk of requiring the opposing party to redraft or reframe the work it has already done on its dispositive motion." Id. Likewise,

allowing late disclosures deprives the opposing party of the opportunity to conduct its own discovery based on the untimely produced information. Of course, a party also has an ongoing duty to supplement discovery under Federal Rule of Civil Procedure 26(e). However, such supplementation must be made in a "timely manner" and as ordered by the Court. Id.

Fidlar claims its duty to supplement its answers to Interrogatories 4 and 8 arose when it learned for the first time in October of 2014, after fact discovery had closed, that it had no new customers in Indiana in 2014. It learned this when its executives conducted "their due diligence in preparation for their annual meeting with the sales team regarding future business planning." Although it knew before preparing for the annual meeting that it also had zero growth in Indiana in 2013, Fidlar claims it dismissed that lack of growth as an anomaly, and it was only when they saw the 2014 numbers that they realized it was due to LPS's actions.

Fact discovery in this case closed on September 15, 2014, shortly before the meeting occurred. Nearly all of the information available to Fidlar regarding the damages at issue was available to Fidlar well within the discovery period. Fidlar's discovery obligations in federal litigation are not defined by when executives at Fidlar decided to meet and "discover" that they have damages in an area included in the Complaint Fidlar filed 19 months earlier. Fidlar had a duty to "diligently obtain the necessary information and prepare and provide its damages computation within the discovery period." See *Jackson v United States*, 278 FRD 586, 593 (D Nev 2011), citing *Allstate Ins Co v Nassiri,* 2010 WL 5248111, *4 (D Nev). There is no evidence that Fidlar made any attempt to discover this information sooner and, indeed, only discovered the information during the course of its ordinary business, rather than as part of its duty to discover and disclose the information. In light of Fidlar's duty to compute its damages as

required in Rule 26(a)(1)(A)(iii) and pursuant to the original request for them to do so in Interrogatory 4, Fidlar had an obligation during the discovery phase of this case to actively discover and produce the information it "discovered" in preparation for its annual meeting. There is no contention that the data relied upon by the Fidlar executives was not available to them during the discovery phase; only that they did not bother to look for or at it until preparing for their meeting after fact discovery in this case had closed.

Additionally, there is very little information in Fidlar's supplementation that can even be considered "new." For example, looking at the supplemental answer to Interrogatory 4, the chart previously submitted by Fidlar in response to the original interrogatory now has a row added for "Diminution of Business Reputation and Goodwill." However, that row adds nothing of any substance. It provides no dollar amounts, no computation of damages, no proposed methodology for calculating the same and only states "continue to accumulate." In other words, there is no new *information* contained in the chart—just the insertion of the damages category as a *heading* in the chart but without any information of substance. The information is useless to LPS or anyone else and does not constitute new information. Fidlar does, however, provide a three paragraph "explanation" of the newly inserted row.

As for these three paragraphs of "explanation" attached to the new row, the first two paragraphs cite to previously conducted depositions and produced documents. The deposition of Ginger Bradford was conducted on May 14, 2014, well within the discovery phase of this case, and there was no reason why Fidlar could not have directed LPS to this deposition before the discovery deadline passed in this case. Although Fidlar also cites to the deposition of David Steil, (conducted after the close of fact discovery) in the supplemental answer, Mr. Steil is a co-owner of Fidlar. (D. 76 at ECF p. 10). Any information Mr. Steil may have

revealed in his deposition was available to Fidlar long before that deposition and within the time for conducting discovery. Finally, paragraph three of the supplemental answer references the meeting where Fidlar "discovered" its damages, but, as already noted, *supra*, Fidlar had an obligation during the discovery phase of this case to actively discover and produce this.

Looking at the supplemental answer to Interrogatory 8, that answer points LPS to the same four individuals listed as potential witnesses in the original answer. Likewise, the reference to the deposition of Ginger Bradford and other County Recorder of Deeds was listed in both sets of answers. Nothing new here.

The only new information in the supplemental answer to Interrogatory 8 is a reference to "documents previously produced on Fidlar's Expedited, Second, Third, Fourth and Fifth Production Disks, as well as Fidlar's Sixth Production Disk"; a reference to depositions of "Fidlar's agents," and reference back to the supplemental answer to Interrogatory 4.

As already found, *supra*, the information supplied in paragraph 3 of the explanation of the chart contained in supplemental answer to Interrogatory 4 was untimely and is excluded. As for the other "new" information in supplemental answer 8, the answer simply points to discovery already produced and depositions already taken in the case. There is nothing "new" in that sense, and, similar to the supplemental answer to Interrogatory 4, anything that is new could and should have been disclosed to Fidlar before the close of discovery.

**B**

Fidlar's supplemental answers are therefore untimely, and these untimely disclosures are not harmless. As LPS argues, by providing information after the close of discovery which it could have and should have provided to Fidlar *before* the close of discovery, LPS is deprived of the opportunity to adequately explore the information during the discovery phase of the case. Nor is it enough to argue

8

that any harm can be cured by reopening discovery on the late disclosed issue, as Fidlar suggests.

Under the Federal Rules of Civil Procedure, it is the court's prerogative-indeed, its duty-to manage its caseload and enforce deadlines. *Reales v Consolidated Rail Corp*, 84 F3d 993, 996 (7th Cir 1996). It is not the right of a party who chooses not to comply with those deadlines to be able to restructure them at will. "Nor is it the prerogative of the violator to require his victim to accept his largesse in the form of allowing discovery to proceed after the deadline set for the close of discovery by the court. Late disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen discovery." *Finwall,* 239 FRD at 500; See *Rick,* 1994 WL 484633, *3 (rejecting reopening discovery as a curative); *Aon Risk Services, Inc of Illinois v Shetzer,* No. 01-7813, 2002 WL 1989466, *6 (ND Ill) (rejecting argument that late disclosure was harmless because there was time to conduct deposition before trial; all discovery was required to be completed before the extended discovery deadline); *Gregory v Oliver,* No. 00-5984, 2002 WL 31972165, *1 (ND Ill)(opportunity to depose expert does not make up for inadequate expert report). Under Rule 37(c)(1), a party must show "substantial justification" for failing to disclose information required by Rule 26(a). In the instant case, Fidlar has shown no, let alone substantial, justification for its failure to disclose the information contained in the supplemental answers when it could and should have known and disclosed the information before fact discovery in this case closed. The information in the supplemental answers is therefore excluded.

## IV

LPS not only argues that the supplemental answers to Interrogatories 4 and 8 should be excluded as untimely, but that Fidlar should be entirely excluded from presenting evidence on its claimed damages for diminution in

business reputation and loss of goodwill. However, simply because the Court has excluded as untimely the supplemental answers to Interrogatories 4 and 8 as untimely does not mean that *all* evidence in this damages category should be excluded.

As already noted, Fidlar included a claim for these damages in its Complaint, and it did provide answers to the interrogatories while fact discovery was open on this issue—answers to which LPS did not object. There is nothing to suggest that Fidlar completely abandoned its claim for these damages; only that it has been dilatory in providing LPS with the discovery thereon. Excluding the untimely evidence provides LPS the remedy for those untimely disclosures.

Likewise, as repeatedly noted, discovery in this case is now closed and LPS's dispositive motion (along with Fidlar's response) is before the District Judge. With discovery closed, Fidlar is precluded from further production of discovery on the issue; the time for that has passed. Given Fidlar's failure within the discovery phase of this case to ever provide a computation of its damages, or even attempt to provide a methodology to LPS for doing so in violation of Federal Rule of Civil Procedure 26(a)(1)(A)(iii), it is too late for it to do so now after discovery has closed. It may, therefore, very well be impossible for Fidlar to prove any damages in this category, given the paucity of discovery it provided to LPS on this issue and its failure to even attempt a computation of the damages for diminution of business reputation and loss of goodwill. However, that is a question for summary judgment or trial and not a basis for excluding Fidlar's claim on the question entirely. In other words, Fidlar may pursue its claim for damages due to a diminution in business reputation and loss of goodwill, but it is limited to the discovery which was timely provided to LPS.

## V

For the foregoing reasons, the portion of LPS's Motion to Exclude Untimely Disclosed Evidence (D. 75) addressed in this Order is GRANTED to the extent that Fidlar's supplemental answers to Interrogatories 4 and 8 are excluded, but DENIED to the extent that Fidlar is allowed to pursue its claim for diminution of business reputation and loss of goodwill to the extent that it relies upon discovery produced to Fidlar while discovery was open in this case.

Finally, after argument on LPS's motion, Fidlar filed a "Motion Seeking Leave to Attach Newly Acquired Exhibit to Its Previously Filed Response to Defendant's Motion to Exclude." (D. 84). That motion is DENIED. Nothing in Fidlar's proposed exhibit changes the Court's analysis herein.

So Ordered.

Entered on January 6, 2015

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE